IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. NICASTRO, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 15-182 |
| v. : | Magistrate Judge Keith A. Pesto |
| : | |
| P. JOEL RITCHEY, et al, : | |
| : | |
| Defendants, : | |
| : | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Robert Nicastro, is a prisoner currently incarcerated at SCI-Fayette proceeding *pro se*. He has filed a Complaint (ECF 2), alleging that when he was incarcerated at SCI-Laurel Highlands in 2013, he was terminated from his therapeutic community program, causing his conditional grant of parole to be rescinded the day after he threatened to file a grievance claiming that being forced to participate in therapeutic community violated his religious liberty. The only defendants remaining in this action are defendants Ritchey and Earnesty. For the reasons that follow, defendants' Motion for Summary Judgment should be granted and the Complaint dismissed in its entirety with prejudice.

**I. Undisputed Material Facts**

Plaintiff, Robert Nicastro, was approved for parole on August 20, 2013, conditional upon his completion of his therapeutic community program. (Ex. 1 p. 4) Plaintiff's approval for parole was rescinded due to therapeutic community failure. (Ex. 1 p. 5)

Plaintiff had signed a "Therapeutic Community Admission/Consent Form" on April 24, 2013. That form stated, "By signing this form, I agree to meet all expectations and abide by all rules and regulations of the Therapeutic Community." (Ex. 2)

1

Plaintiff was terminated from his therapeutic community program on August 27, 2013. His termination was the culmination of a series of events that showed he was defiant towards recovery (he was convicted of DUI) and not compatible with the therapeutic community. Plaintiff began the therapeutic community program on May 2, 2013. He was peer encountered for defiant behaviors on May 15, 2013, but he did not internalize the information provided. In July 26, 2013, plaintiff was given a learning experience for his lack of participation in community activities after he had turned in assignments talking about his personal freedom to drink alcohol and drive a car. Plaintiff received a termination warning on August 1, 2013 for not working his recovery in a positive manner, not complying with treatment, and for playing cat and mouse games. Plaintiff informed his counselor that he had no intention of quitting drinking alcohol or working on his recovery. On August 26, 2013, plaintiff refused to participate in a mock interview. Plaintiff was disrespectful to peer assistants, and his peers complained about him because of his plans to begin using alcohol again upon release. Because of this pattern of negative behaviors, plaintiff was terminated from the program. (Ex. 3)

Plaintiff's last act that led to his termination was the refusal to participate in the mock interview. (Ex. 7)[1] At the mock interview, plaintiff rearranged the room, refused to shake the "interviewer's" hand, and refused to answer questions appropriately. For example, he stated he was fired from his last job, he was only being interviewed because he was being forced to, and he should not be hired. Plaintiff engaged in this disrespectful behavior in front of 15 other inmates, making it an unsafe situation for the staff member conducting the mock interview. (Ex. 7)

---

[1] Exhibit 7 is an entry from plaintiff's Cumulative Adjustment Record. The entry has an objective section documenting plaintiff's actions and a section containing his counselor's impressions. The counselor's impressions are confidential for security reasons and have been redacted.

Upon receiving notice of his termination from the therapeutic community, plaintiff filed Grievance 474991 on August 27, 2013. In Grievance 474991, plaintiff made no mention of being terminated for threatening to file a grievance. In contrast, he asserted that he was terminated due to his "beliefs", despite having completed all requirements for the program. (Ex. 4 p. 1, 3)

On September 5, 2013, plaintiff filed Grievance 476065. In Grievance 476065, he argued that he completed all requirements of the therapeutic community program, and his evaluation contained false information. He made no mention of being terminated for threatening to file a grievance. (Ex. 5 p. 1, 3)

On September 16, 2013, plaintiff filed Grievance 477696. In Grievance 477696, he alleged that he was terminated from the therapeutic community program in violation of his religious freedom because the program was based on belief in a higher power. He made no mention of being terminated for threatening to file a grievance. (Ex. 6 p. 1-2)

## II. Legal Standard

In ruling on a motion for summary judgment, there is a threshold inquiry as to the need for a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate "…if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56I; Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

The party moving for summary judgment bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250. The existence of an alleged factual

3

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the required showing is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-248.

Rule 56 does not allow a non-moving party to rely only on bare assertions, conclusory allegations, or suspicion in resisting a motion for summary judgment. Fireman's Insurance Company of Newark v. DeFresne, 676 F.2d 965, 969 (3d Cir. 1982). Instead, a court will conclude there is no issue for trial unless evidence in the record would allow a jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 249. A court considers the elements of a plaintiff's *prima facie* case under the substantive law when ruling on a motion for summary judgment. Anderson, 477 U.S. at 248. Summary judgment must be granted "…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation, 477 U.S. at 322.

### III. Argument

A. Defendants Are Entitled to Summary Judgment On the Merits of the Retaliation Claim

Defendants are entitled to summary judgment on the merits of the retaliation claim for two separate and independent reasons. First, plaintiff did not engage in a protected activity. Second, the record shows that the same decision would have been made in any event for reasons of legitimate penological interest.

To establish a claim for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Laurensau v. Pluck, 2013 WL 4779010 at *10 (W.D. Pa. 2013) (citing

Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. Laurensau at *11 (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) and Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)). If a plaintiff is able to meet his *prima facie* case, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. Davis at *4 (citing Rauser, 241 F.3d at 334).

First, while filing a grievance is constitutionally protected activity that can give rise to a retaliation claim, the mere *threat* of filing a grievance, as plaintiff alleged he did in this case, is not constitutionally protected activity.

> Indeed, courts have held that the mere "threat to file a prison grievance does not satisfy the first element of a retaliation claim." Griffin–El v. Beard, 2013 WL 228098, at *8 (E.D. Pa. 2013). See Stewart v. Varano, 2011 WL 3585409, at * 1 (M.D. Pa. 2011) (threatening to file grievance is not protected activity for First Amendment retaliation purposes); Hunter v. Bledsoe, 2010 WL 3154963, at *4 (M.D. Pa. 2010) ("The difficulty here for Plaintiff is that he only threatened to file a grievance; he did not actually file one. Since Plaintiff's conduct did not actually involve the exercise of a constitutional right he fails to satisfy the first element of a retaliation claim ...."); Bendy v. Hutler, 2007 WL 87632, at * 2 (D. N.J. Jan.9, 2007), aff'd, 341 F. App'x 799 (3d Cir. 2009) ("Plaintiff failed to plead that he filed a grievance against [Defendant], rendering his allegations fatally flawed for want of a constitutionally protected activity or that such activity motivated [Defendant's] acts"). See also Bridges v. Gilbert, 557 F.3d 541, 554-55 (7th Cir. 2009) ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance") (emphasis in original); Hunter v. Bledsoe, 2010 WL 3154953, at * n. 8 (finding no Third Circuit cases that hold mere threat to file prison grievance satisfies first element of a retaliation claim).

5

> Because Plaintiff in this case did not actually file a grievance against Kalwasinski but merely threatened to do so, he did not engage in constitutionally protected activity in the first instance. Accordingly, he is unable to establish a First Amendment retaliation claim against Defendant Kalwasinski, thereby entitling Kalwasinski to summary judgment on Count I of the Complaint.

Ortiz v. Baird, 2013 WL 1290555 at *8-9 (W.D. Pa. 2013); Clay v. Overmyer, 2015 WL 630379 at *4 (W.D. Pa. 2015).[2]

Second, the record evidence is clear that even if plaintiff had engaged in constitutionally protected activity before he was terminated, he would have been terminated from the therapeutic community program for reasons related to legitimate penological interest in any event. Plaintiff had a long list of infractions in the therapeutic community program related to not taking the program seriously, causing disruptions, and flouting the goals and purpose of the program. He was given a termination warning, yet continued the same negative behavior until he was finally terminated following his refusal to behave himself during a mock interview, which created a dangerous situation as his antics took place before fifteen other inmates. (Ex. 3, Ex. 7) Nothing required defendants to keep such a disruptive and uncooperative inmate in the therapeutic community program, and plaintiff himself had promised to "meet all expectations and abide by all rules and regulations" as a condition to being enrolled in therapeutic community. (Ex. 2) Instead, he chose to try to make a mockery of the program and was terminated from it.

For either or both of these reasons, defendants are entitled to summary judgment on plaintiff's retaliation claim.

---

[2] In a recent opinion, the Third Circuit suggested in dicta that notifying prison officials of the intent to file a grievance could constitute a protected activity. Watson v. Rozum, ___ F.3d___, 2016 WL 4435624 at *3 (3d Cir. 2016). Whether the threat to file a grievance is a protected activity was not at issue in that case, and the Court's suggestion, which contradicts numerous district court opinions on the subject, is not controlling.

B. <u>Defendants Are Entitled to Summary Judgment Because Plaintiff Did Not Properly Exhaust His Administrative Remedies</u>

Defendants are also entitled to summary judgment because plaintiff did not properly exhaust his administrative remedies. He filed three grievances on the matter and, although he appealed them to final review, not once did he allege that he was terminated from therapeutic community because he threatened to file a grievance, which is the only claim in this lawsuit. Instead, he claimed he was terminated because he objected to the faith-based nature of the program or that he was given a false evaluation despite having completed all program requirements. This is not proper exhaustion for a claim of retaliation for threatening to file a grievance.

The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). The Supreme Court has held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." <u>Porter v. Nussle</u>, 534 U.S. 516, 516, 122 S.Ct. 983, 984 (2002). Exhaustion of administrative remedies in §1997e(a) cases is mandatory and no case may be brought until the inmate-plaintiff has exhausted all available administrative remedies. <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 739, 121 S.Ct. 1819 (2001) (emphasis added). Accordingly, "it is beyond the power of the court to excuse compliance with the exhaustion requirement." <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000); <u>Booth v. Churner</u>, 206 F.3d 289, 300 (3d Cir. 2000) aff'd, 532 U.S. 731, 121 S.Ct. 1819 (2001).

Proper exhaustion, in accordance with the DOC's grievance procedures, is required, or else the grievant has procedurally defaulted and failed to exhaust his administrative remedies. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). In order to properly exhaust as to a particular issue or claim or a particular defendant, the inmate-plaintiff is required to name that issue or claim or future defendant in the operative grievance or else the grievance is procedurally defective as to that issue, claim, or future defendant. Boyd v. U.S., 396 Fed. Appx. 793, 796 (3d Cir. 2010) ("[T]o pursue a claim in federal court based on retaliation, he must first have exhausted administrative remedies for that claim. Winning on one claim does not excuse failure to exhaust on a different claim that is factually related."); Stewart v. Kelchner, 358 Fed. Appx. 291, 296-97 (3d. Cir. 2009) ("[I]n the March 2005 grievance, Stewart complained only of the allegedly inadequate medical treatment he received for his MRSA infection. Stewart did not make any reference to the allegedly unsanitary and overcrowded conditions that he claims gave rise to the alleged MRSA epidemic, or to any other action that he attributes to Kelchner in this §1983 action. Because the unprocessed grievance did not raise Stewart's claim against Kelchner, it cannot provide a basis for concluding that he exhausted his available remedies as to this claim."); Spruill, 372 F.3d at 234 (inmate-plaintiff is required to name individuals who are later sued in grievance or else grievance is procedurally defective as to those individuals).

Because plaintiff has not properly exhausted his claim that he was terminated from therapeutic community because he threatened to file a grievance, defendants are entitled to summary judgment on this claim as well.

                        Respectfully submitted,

                        BRUCE R. BEEMER
                        Attorney General

                        /s/ Timothy Mazzocca
                        TIMOTHY MAZZOCCA
                        Deputy Attorney General
                        Litigation Section

                        KENNETH L. JOEL
                        Chief Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
564 Forbes Avenue
Pittsburgh, PA 15219
Date:  September 28, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within *Brief in Support of Motion for Summary Judgment* was served upon the following individual via the CM/ECF Filing System or by First Class Mail.

**ROBERT NICASTRO**
KV-7893
P.O. Box 9999
LaBelle, PA  15450-1050

                                                  By:     /s/ Timothy Mazzocca
                                                  TIMOTHY MAZZOCCA
                                                  Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
564 Forbes Avenue, Manor Complex
Pittsburgh, PA 15219

Date:  September 28, 2016