IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. NICASTRO, | ) | Case No. 3:15-cv-182 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| P. JOEL RITCHEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before Magistrate Judge Keith A. Pesto for proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636 and Local Civil Rule 72. Pro se plaintiff Robert J. Nicastro ("Plaintiff") has raised two First Amendment claims under 42 U.S.C. § 1983 against eight corrections defendants associated with Pennsylvania's State Correctional Institution at Laurel Highlands ("SCI Laurel Highlands"): an Establishment Clause claim and a Retaliation claim. The Court will resolve herein the Magistrate Judge's Report & Recommendations ("R&Rs") at ECF Nos. 5 and 49. The Court adopts the R&R at ECF No. 5 for its reasoning and conclusion, and it accordingly dismisses all defendants from this case except for P. Joel Ritchey and Lorrie Earnesty.[1] The Court also adopts the R&R at ECF No. 49 for its reasoning and conclusion as to the Retaliation claim, and it accordingly grants the remaining defendants' motion for summary judgment on this

---

[1] The defendants named in the original complaint are as follows: P. Joel Ritchey (DATS Supervisor, SCI Laurel Highlands); Lorrie Earnesty (DATS Counselor, SCI Laurel Highlands); Yletta Clark (DATS Supervisor, SCI Somerset); James Rievel (Corrections Counselor 2, SCI Laurel Highlands); John Cree (Unit Manager, SCI Laurel Highlands); William Mailman (Deputy for Centralized Services, SCI Laurel Highlands); Trevor Wingard (Superintendent, SCI Somerset); and Dorina Varner (Chief, Secretary's Office of Grievances and Appeals).

1

first claim. However, it does not adopt the R&R at ECF No. 49 as to the Establishment Clause claim, and it denies summary judgment on this second claim. The Court so holds for the reasons discussed below.

I. BACKGROUND

In 2012, Plaintiff pleaded guilty to separate counts of Driving Under the Influence ("D.U.I.") in the Courts of Common Pleas of Dauphin, Lancaster, and Mercer counties, Pennsylvania. (Case No. 2:14-CV-732, ECF No. 1 at 3).[2]  Plaintiff was sentenced to terms of imprisonment ranging from 90 days to 5 years, to be served concurrently. (*Id.*).[3] Plaintiff began serving his prison term at SCI Laurel Highlands on January 11, 2013. (*Id.*, ECF No. 1-1 at 2). Based on the sentence range that Plaintiff received, the earliest date on which he could be released was October 21, 2013, and the latest date on which he could be released was November 27, 2017. (*Id.*).

On August 20, 2013, the Commonwealth of Pennsylvania Board of Probation and Parole (the "Parole Board") issued a decision granting Plaintiff parole on or after August 27, 2013. (ECF No. 22-1 at 2).[4] However, this grant of parole was contingent "upon completion of Therapeutic Community," which is a substance use disorder outpatient treatment program. (*Id.*). On August

---

[2] Plaintiff pleaded guilty to one count of D.U.I. in the Court of Common Pleas of Dauphin County, Pennsylvania, on July 19, 2012, in *Commonwealth v. Robert Jarrett Nicastro*, No. CP-0000569-2012. (Case No. 2:14-CV-732, ECF No. 1 at 3). He pleaded guilty to one count of D.U.I. in the Court of Common Pleas of Lancaster County, Pennsylvania, on September 28, 2012, in *Commonwealth v. Robert Jarrett Nicastro*, No. CP-0000594-2012. (*Id.*). He pleaded guilty to one count of driving while his operating privileges were suspended/revoked in CP-0000594-2012. (*Id.*). And, Plaintiff pleaded guilty to one count of D.U.I. in the Court of Common Pleas of Mercer County, Pennsylvania, on November 1, 2012, in *Commonwealth v. Robert Jarrett Nicastro*, No. CP-0000121-2007. (*Id.*).
[3] In CP-0000569-2012, Plaintiff was sentenced to a prison term of 11 months to 5 years. (Case No. 2:14-CV-732, ECF No. 1 at 3). In CP-0000594-2012, Plaintiff was sentenced to a prison term of 90 days to 5 years. (*Id.*). And, in CP-0000121-2007, Plaintiff was sentenced to a prison term of 9 months to 2 years. (*Id.*).
[4] All docket citations hereafter will be to the docket from the present matter (Case No. 3:15-cv-182), and the Court will only cite to the docket number in these citations.

26, 2013, the Parole Board issued a second order that moved back the parole date to October 21, 2013, but left the rest of its earlier decision unchanged. (*See* ECF No. 22-1 at 5).

Plaintiff enrolled in the Therapeutic Community ("TC") program on April 24, 2013, (*see* ECF No. 22-1 at 8), and he began TC on May 2, 2013. (*Id.* at 10). However, as a self-styled "free-thinker[,]"(ECF No. 23-1 at 35), who "[does not] believe in God [or] a Higher Power[,]" (ECF No. 23-6 at 3), Plaintiff quickly began to chafe at what he perceived to be "the religious and cult-like aspects of the 'recovery' that TC and the staff were preaching." (ECF No. 23-1 at 25). Plaintiff alleges that he repeatedly expressed "disbelief in [Alcoholics Anonymous ("AA")] and [the] 12-step programs"—both verbally and in written assignments—and "question[ed] the logic and the constitutionality of the government forcing people to attend meetings" involving overt religious elements. (ECF No. 23-1 at 29). (As discussed in Section II.B, *infra*, AA and associated 12-step programs are widely recognized as containing such elements).

On August 27, 2013, Plaintiff had nearly finished TC (having completed 151 of the 160 required sessions) when he was involuntarily terminated from the program by Defendant Earnesty. (ECF No. 23-1 at 29). Consequently, on October 1, 2013, the Parole Board issued an order stating that it would "rescind paroling board action recorded on August 26, 2013, due to therapeutic community failure[.]" (ECF No. 22-1 at 6). Plaintiff pursued his administrative remedies through the final level of appeal, but his challenges were unsuccessful. (*See id.* at 12–31).

On July 16, 2015, Plaintiff filed a complaint against eight Pennsylvania state correctional officers. (ECF No. 2). Plaintiff's pro se complaint, construed liberally, *see Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), raises two substantial claims: first, that he was "coerced . . .

to participate in [a] Faith-based cult under threat of prolonging incarceration" in violation of his rights under the First Amendment's Establishment Clause (the "Establishment Clause claim"). (ECF No. 2 at 3). And second, that he was terminated from the TC program in retaliation for his expressed intent of filing a grievance regarding his Establishment Clause allegations, in violation of his rights of petition under the First Amendment (the "Retaliation claim"). (*See id.*).

On July 16, 2015, Magistrate Judge Pesto entered an R&R recommending that the Court dismiss the complaint for failure to state a claim against all defendants save for two: P. Joel Ritchey (DATS Supervisor, SCI Laurel Highlands) and Lorrie Earnesty (DATS Counselor, SCI Laurel Highlands). (ECF No. 5 at 3).[5] The Magistrate Judge also recommended that Plaintiff not be given leave to amend his complaint. (*Id.* at 4). The Court did not rule on the R&R at ECF No. 5 and, contrary to Magistrate Judge Pesto's recommendation, Plaintiff filed an amended complaint on August 1, 2016. (ECF No. 18). And, on September 24, 2015, Defendants Ritchey and Earnesty ("Defendants") filed an answer to the complaint, noting that they are the only defendants remaining in this case. (ECF No. 9 at 1 n.1) (citing ECF No. 5).

On September 28, 2016, Defendants filed a motion for summary judgment. (ECF No. 19). On that same date, Defendants also filed a supporting brief, (ECF No. 20), a Concise Statement of Material Facts, (ECF No. 21), and an Appendix to their summary judgment motion. (ECF No. 22). On October 25, 2016, Plaintiff filed a response in opposition to Defendants' motion for summary judgment. (ECF No. 23).

---

[5] "DATS" is an acronym for "Drug and Alcohol Treatment Specialist."

4

On August 16, 2022, Magistrate Judge Pesto filed an R&R recommending that the Court grant Defendants' motion for summary judgment. (ECF No. 49). In the R&R, the Magistrate Judge notified Plaintiff that, pursuant to 28 U.S.C. § 636(b)(1), he would have fourteen days to file written objections to the R&R. (*Id.* at 12). In the docket text accompanying this R&R, the Court specified that Plaintiff would have until August 30, 2022, to file objections if he had ECF access and until September 2, 2022, if he did not. (*See generally id.*). On September 1, 2022, Plaintiff moved for an extension of time to file objections. (ECF No. 50). On September 16, 2022, Magistrate Judge Pesto granted this motion and extended Plaintiff's deadline for filing objections to October 31, 2022. (ECF No. 52). Plaintiff timely filed objections on October 31, 2022. (ECF No. 53).

## II. ANALYSIS

Before the Court are two unresolved R&Rs: the R&R at ECF No. 5 (recommending sua sponte that the Court dismiss all defendants from the case except Defendants Ritchey and Earnesty), and the R&R at ECF No. 49 (recommending that the Court grant the remaining defendants' motion for summary judgment). The Court will rule on each in turn.

### A. R&R AT ECF NO. 5

Because neither party filed timely objections to the R&R at ECF No. 5, the Court must review this R&R with "reasoned consideration," which obligates the Court to afford only "some level of review to dispositive legal issues raised by the report[.]" *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017). Having reviewed the R&R at ECF No. 5, the Court holds that it will adopt this R&R for its reasoning and conclusion. It accordingly dismisses all named defendants from this case except for Defendants Ritchey and Earnesty.

### B. R&R AT ECF NO. 49

Because Plaintiff has filed objections to the R&R at ECF No. 49, the Court must review this R&R de novo. Having reviewed Plaintiff's objections, the Court adopts the R&R at ECF No. 49 for its reasoning and conclusion as to Plaintiff's Retaliation claim. However, the Court disagrees with the Magistrate Judge's conclusion as to Plaintiff's Establishment Clause claim and will substitute its own reasoning and conclusion for that provided in the R&R. As explained below, the record contains specific facts indicating that (a) Plaintiff was required to complete the TC program because failure to do so would have negatively impacted his parole eligibility; (b) that this program involved religious elements with which Plaintiff found engagement objectionable; (c) that engagement with these religious elements was effectively required for participating inmates; and (d) that Plaintiff's termination from the program was at least partially a consequence of Plaintiff's unwillingness to so engage. Plaintiff has put forward evidence for these four propositions sufficient to permit a reasonable jury to find in his favor on his Establishment Clause claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).[6] Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's Retaliation claim but deny this motion as to Plaintiff's Establishment Clause claim.

---

[6] Plaintiff's allegations suffice here as evidence on summary judgment even though they do not appear to be offered by affidavit. *Willis v. Smyth*, No. 2:19-CV-1196, 2021 WL 5893251, at *2 (W.D. Pa. Oct. 28, 2021) (holding that "the factual allegations set forth in Willis's verified complaint, to the extent they are based on his personal knowledge, will also be considered as evidence on summary judgment") (internal citations omitted). *See also Jackson v. Armel*, No. 17-CV-1237, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (treating verified complaint as an affidavit on summary judgment motion); *Boomer v. Lewis*, 3:06-CV-0850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").

It is well-established that "[t]he government violates the First Amendment's Establishment Clause when it requires a prisoner to participate in a drug or alcohol rehabilitation program with a religious component." *Bobko v. Lavan*, 157 F. App'x 516, 518 (3d Cir. 2005). An inmate is "required" to participate in a program if refusal to participate adversely affects the inmate's parole eligibility. *Id.* at 517. Requiring an inmate to participate in a program with a religious component will violate the inmate's Establishment Clause rights unless a secular approach to recovery is available within the program. *See id.* at 518 (holding that conditioning an inmate's parole on TC program completion did not violate the inmate's First Amendment rights because "the defendants submitted evidence establishing that SOS, a secular approach to recovery, is available in the TC program"). The Court finds that Plaintiff has raised material questions of fact as to whether he was offered a secular means of completing SCI Laurel Highlands' TC program and, relatedly, whether he was required to engage with TC's religious and/or spiritual elements in order to successfully complete the program.[7]

First, Plaintiff was required to complete the TC program because his failure to do so had the potential to adversely affect—and, indeed, did adversely affect—his parole eligibility. The Parole Board repeatedly informed Plaintiff that he would be paroled "upon completion of therapeutic community[,]" (ECF No. 22-1 at 2, 5), and later informed Plaintiff of its decision to

---

[7] The Court uses the words "religious" and "spiritual" in this memorandum opinion as both denoting characteristics of the sort that, if established by law, would violate the First Amendment's prohibition against laws "respecting an establishment of religion." U.S. CONST., AMEND. I. Although these words generally have different meanings and connotations, courts have recognized that the religious can also be spiritual, and likewise that the spiritual can also be religious. *See, e.g., Lee v. Weisman*, 505 U.S. 577, 595–96 (1992) ("[The Government] fails to acknowledge that what for many of Deborah's classmates and their parents was a spiritual imperative was for Daniel and Deborah Weisman religious conformance compelled by the State.").

7

"rescind [its grant of parole], due to therapeutic community failure[.]" (*Id.* at 6). Defendants also state in their Concise Statement of Undisputed Material Facts that Plaintiff "was approved for parole . . . conditional upon his completion of his therapeutic community program[,]" and that Plaintiff's approval for parole "was rescinded due to therapeutic community failure." (ECF No. 21 at 1). Lastly, the admission form that Plaintiff signed to enroll in the TC program states that, if the inmate chooses not to participate in TC, he recognizes that "[his] refusal . . . may have a negative impact on [his] consideration by the Parole Board for release." (ECF No. 22-1 at 8). Because the parties do not dispute that Plaintiff's failure of the TC program jeopardized his parole eligibility, the Court finds that Plaintiff was required to participate in that program. *See Bobko*, 157 F. App'x at 517.

Second, the record indicates that certain elements of the TC program at SCI Laurel Highlands were religious and theistic in nature.[8] Plaintiff alleges that the TC program relied heavily on elements derived from AA that were expressly theistic in nature. (*See, e.g.*, ECF No. 23-1 at 36) ("Much of the paperwork we were required to complete assumes or requires belief in AA and/or God or a higher power."). Plaintiff further alleges that he was required to listen to overtly theistic messaging and read aloud overtly theistic affirmations. (*See id.* at 24) (recalling how he "was forced to read the [AA] '12 Promises of Recovery' aloud to the group" and "[state]

---

[8] The Court uses the term "theistic" to denote things relating to "acknowledgement[] of the divine," "belief in a higher power," or "reference to the sacred." *See Fields v. Speaker of Pennsylvania House of Representatives*, 936 F.3d 142, 152 (3d Cir. 2019) (citing *Town of Greece v. Galloway*, 572 U.S. 565, 581, 587, 591 (2014)) (characterizing prayer as "definitionally theistic" because prayer is characterized by the above). For purposes of this memorandum opinion, the Court understands things that are theistic to also be religious and spiritual in nature.

8

what [the 'Promises'] meant to me");[9] (*Id.* at 36) (recalling how he was required to listen to "a sermon on belief in a higher power and 12-step programs").[10] These allegations are corroborated by evidence from TC program materials. (*See, e.g.*, ECF No. 23-6 at 2) (a class handout reads, "In our Twelve Step programs, we repeatedly see the need and make the attempt to surrender—to turn our lives and our will over to the care of God."). They are also corroborated by the policy manual for TC program administration. *See* Substance Use Disorder (SUD) Treatment Programs Procedures Manual ("Policy 7.4.1"). As Chief Grievance Officer Varner notes in her Final Appeal Decision, Policy 7.4.1 states that "an inmate who does not believe in the spiritual basis of AA/NA/12-step, may be referred to another self-help group such as LSR or SMART. The LSR and SMART groups are to provide a non-spiritual approach to abuse treatment standards." (ECF No. 22-1 at 16) (citing 7.4.1 at 6-2). As Magistrate Judge Pesto notes in the R&R at ECF No. 49, the "spiritual basis" Varner refers to is theistic and religious in nature. (*See* ECF No. 49 at 10).[11]

---

[9] In the "12 Promises of Recovery" distributed to inmates participating in the TC program, the eleventh promise states: "We will suddenly realize that God is doing for us what we could not do ourselves." (ECF No. 23-1 at 35).

[10] There is extensive legal scholarship discussing the religious nature of AA's 12-step program and the widely-recognized constitutional risks of requiring inmates to participate in this program. *See, e.g.*, Phillip Grudzina, Comment, *Secular Dissent: Protecting Non-Believers From Coercive Religious Parole Programs*, 106 J. CRIM. L. & CRIMINOLOGY 565, 567 n.14 (2016) (characterizing the 12-Step program as "[t]he most prevalent religious rehabilitation model"); Morris Jenkins et al., *DUI Treatment Programs and Religious Freedom: Does* Cutter v. Wilkinson *Change the Analysis*, 55 U. MD. L.J. RACE, RELIGION, GENDER, & CLASS 351, 351 (2005) ("Legal commentators and scholars consistently argue that a compulsory mandate to attend Alcoholics Anonymous . . . either as a condition of probation or as an inmate, violates the First Amendment."); Emily M. Gallas, Comment, *Endorsing Religion: Drug Courts and the 12-Step Recovery Support Program*, 53 AM. U. L. REV. 1063, 1066 (2004) ("[M]andated 12-Step participation as a component of a drug court treatment program violates an individual's First Amendment right to be free from government endorsed religion."); Michael G. Honeymar, Jr., Note, *Alcoholics Anonymous as a Condition of Drunk Driving Probation: When Does it Amount to Establishment of Religion*, 97 COLUM. L. REV. 437, 438–39 (1997) ("Because AA's approach to rehabilitation is arguably religious, attending AA to fulfil a state-directed probationary condition raises serious constitutional questions under the First Amendment's Establishment Clause.").

[11] Magistrate Judge Pesto writes: "In her final-level response to Nicastro's earliest grievance, Chief Grievance Officer Varner pointed out to Nicastro that DOC had non-theistic (she wrote 'non-spiritual')

Although Plaintiff himself asserts that "TC, as written and presented, is based on science – <u>NOT</u> religion[,]" and that "Ritchey and staff use[d] religion [in the TC] because they are incompetent[,]" (ECF No. 53 at 6) (emphasis original), the Court does not find that the Laurel Highlands TC program is properly understood as distinct from its administration. Courts in the Third Circuit, when assessing whether a TC program violated the Establishment Clause, examine the particular program in question at the time of its administration. *See, e.g., Begnoche v. Derose*, No. 3:12-CV-1057, 2016 WL 4611545, at *4 (M.D. Pa. Sept. 6, 2016) (finding that administration of a particular TC program did not violate the Establishment Clause because the program's only spiritual aspects were voluntary); *Bey v. Pennsylvania Board of Probation and Parole*, No. 1:10-CV-02598, 2016 WL 8198501, at *5 (M.D. Pa. Dec. 15, 2016), *adopted in* 2017 WL 457191 (M.D. Pa. Feb. 2, 2017) (finding a "genuine dispute of material fact . . . as to whether the TC program at SCI-Coal Township contains a religious component in violation of the Establishment Clause of the First Amendment"); *Harris v. Risbon*, 3:15-CV-121, 2015 WL 507344, at *2 (M.D. Pa. Feb. 6, 2015) (finding that "[e]lements of AA, NA, and other religious counseling pervade the TC program as operated at SCI-Smithfield").

Third, the record also indicates that engagement with the self-help group activities—and, by extension, the religious elements of those activities—was a de facto requirement of the SCI Laurel Highlands TC program. Plaintiff alleges that he was terminated from the TC program for "not following the tenets of Alcoholics Anonymous" and for "not engaging in Ritchey's Religion." (ECF No. 53 at 1). He supports this allegation with numerous, specific facts. (*See, e.g.,* ECF No.

---

equivalents of TC – one of which was SMART – and there was no claim or evidence that prior to termination Nicastro had told anyone about his religious objections or that he had requested another self-help program." (ECF No. 49 at 10).

10

23-1 at 25) (alleging that the termination warning he received from Defendant Ritchey on August 1, 2013, was given "specifically for my essay on Personal Freedom" because Ritchey, in the course of delivering the warning, "attacked my beliefs, including my belief in Natural Law"); (ECF No. 23 at 3) (alleging that Defendant Ritchey told the inmates in TC that, "Believers should be giving 'pull-ups' to non-Believers").[12]  Although Defendants do not directly address such factual allegations in their briefings, the Court finds that the vague explanations they offered for Plaintiff's termination on administrative review (which Defendants offer in their Appendix at ECF No. 22) are insufficient to preclude a reasonable trier of fact from finding in Plaintiff's favor. (*See, e.g.*, ECF No. 22-1 at 10) (Defendant Earnesty writes in her evaluation dated August 27, 2013, that Plaintiff was terminated for exhibiting "negative behaviors" including a "pattern of challenging assignments and refusing to participate[.]").[13]  There remains a material question of fact as to whether Defendants treated Plaintiff's refusal to engage with TC's religious elements as a basis for terminating him from the program.

There is also a material question of fact as to whether Plaintiff had access to a secular self-help alternative that would have allowed him to spurn TC's religious elements and still complete the TC program.  Policy 7.4.1 indicates that AA (and its 12-step approach) and SMART are two

---

[12] The record indicates that receipt of "pull ups" can result in an inmate's termination from TC.  This conclusion is based on TC program materials stating that "Non-Participation applies to all parts of the program but a primary focus will be on pull ups and push ups."  (ECF No. 23-6 at 4).  These materials further state that the consequences for "Non-Participation" offenses are escalating warnings, leading to termination from the program after the fourth offense.  (*Id.*).

[13] The other reasons that Earnesty provided for Plaintiff's termination are similarly vague.  She writes that Plaintiff, among other things, "presented as defiant toward recovery which is not compatible within a therapeutic community[,]" "did not internalize any information provided[,]" exhibited a "lack of participation in community activities[,]" turned in assignments with "inappropriate content[,]" did not "work[] his recovery in a positive manner" or "comply[] with treatment[,]" and "play[ed] cat and mouse games." (ECF No. 22-1 at 10).

examples of voluntary self-help programs that inmates can join within the context of TC program participation. *See* Policy 7.4.1 at 6-2 (stating that "[a]n inmate involved in a TC program will be oriented to self-help programs" such as AA/12-step and SMART). Plaintiff alleges—and Defendants do not dispute—that he attended SMART meetings while enrolled in TC. (*See, e.g.*, ECF No. 23 at 3, 5). However, because Defendants allegedly made "AA dogma . . . part of the TC curriculum[,]" (*id.* at 2), Plaintiff maintains that he could not avoid program's religious elements even with access to SMART. If Plaintiff's account of the facts is accurate, the "nontheistic alternative" of SMART, (ECF No. 49 at 12), was no alternative at all.

It is not clear whether this factual account is accurate, and this lack of clarity raises material questions of fact fit for the jury upon which resolution of Plaintiff's Establishment Clause claim depends. The Court therefore holds that summary judgment on this claim should be denied. This holding aligns with those of other Third Circuit courts under similar circumstances. *See, e.g., Bey*, 2016 WL 8198501, at *4–5 (denying a motion for summary judgment on Establishment Clause claim after finding that a jury could reasonably conclude, based on the factual record, that "[n]one of these elements appear to be avoidable for inmates participating in SMART," making "the availability of SMART workbooks . . . an inadequate alternative to a TC program that allegedly contains religious elements.").[14]

An appropriate order follows.

_____

[14] The facts in this case are more similar to those in *Bey* than those in *Begnoche*. In the latter case, the district court found that a TC program was "both voluntary and secular" and "did not constitute a government endorsement of a specific religious belief[,]" since the program in "include[d] a voluntary spiritual group aspect which was led by inmates" and apparently did not require activities that were religious or spiritual in nature. *Begnoche*, 2016 WL 411545, at *4. Here, as in *Bey*, the record indicates a genuine issue of fact regarding the voluntariness of the TC program's religious elements.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. NICASTRO, | ) | Case No. 3:15-cv-182 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| P. JOEL RITCHEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 2nd day of February, 2023, it is **HEREBY ORDERED** that Magistrate Judge Pesto's R&R at ECF No. 5 is adopted as the Opinion of the Court for its reasoning and conclusion.

**IT IS FURTHER ORDERED** that the clerk of court dismiss from this case the six defendants other than Defendants P. Joel Ritchey and Lorrie Earnesty—namely, Defendants Yletta Clark, James Rievel, John Cree, William Mailman, Trevor Wingard, and Dorina Varner.

**IT IS FURTHER ORDERED** that Magistrate Judge Pesto's R&R at ECF No. 49 is adopted as the Opinion of the Court for its reasoning and conclusion as to Plaintiff's Retaliation claim. The Court does not adopt the R&R's reasoning or conclusion as to Plaintiff's Establishment Clause claim.

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment at ECF No. 19 is **GRANTED IN PART** as to Plaintiff's Retaliation claim, and it is **DENIED IN PART** as to Plaintiff's Establishment Clause claim.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

Notice to by U.S. Mail to:

**Robert J. Nicastro**
315 South Broad Street
Unit 1126
Philadelphia, PA 19107